Fuchsberg, J. (dissenting in part).
By these two consolidated proceedings the petitioning voluntary (charitable) hospitals sought judicial review of various aspects of the methodology of rate-making relied upon by the State agency respondents in fixing the price which respondent Associated Hospital Service of New York (AHS), a private insurance company organized pursuant to article IX-C of the Insurance Law, was to pay for hospital services furnished by the hospitals to AHS subscribers.
In 1969, in large part in response to the alarming escalation of hospital rates (see Procaccino v Stewart, 25 NY2d 301, 308 [especially dissent of Judges Scileppi, Breitel and Jasen]), the Legislature enacted what is appropriately known as the "Cost Control Act of 1969”, to the end that those costs produced by inefficient, wasteful and perhaps needlessly indulgent hospital practices not be permitted to form a base for the computation of rates (L 1969, ch 957). Indeed, it specifically required that the reimbursement rates certified by the Commissioner of Health to the Superintendent of Insurance be "reasonably related to the costs of efficient production of [hospital] service” (Public Health Law, § 2807, subd 3). Regrettably, however, that intent of the statute appears to have been ignored and, without making any effort to ascertain or measure actual efficiency or waste, the commissioner recommended, and the superintendent promulgated, rates which the hospitals’ figures show to be a gross understatement of their costs.
Accordingly, in addition to affirming the Appellate Division’s order insofar as it granted partial relief to the hospitals, I would grant at least the following further relief:
1. Reimbursement for a proportionate share of the "Community Service Factor” during the years 1971 to 1973. This factor covers emergency and outpatient services charitable hospitals provide to the community without regard to cost. It is not disputed here that, prior to 1970, Associated Hospital Services (AHS) reimbursed hospitals for its fair share of the losses these institutions incur in providing uninsured outpatient and emergency care to the community. In 1970, however, pursuant to what it read as authorization in the Cost Control Act, AHS decided that it would only pay a limited part of its proportionate share of those costs. Moreover, despite the fact that *871 hospitals must fund depreciation expenses, it instituted an accounting method under which depreciation figures were counted as income but not as expenses and under which income from private-room patients was counted twice. This method produced a setoff against community service costs so that AHS, by its calculations, ended up owing nothing at all. Mr. Justice Yesawich, in his dissenting opinion at the Appellate Division, justifiably described that accounting method as "bizarre” (p 497).
For some 30 years prior to the passage of the Cost Control Act, AHS, proportional to the number of inpatient days its subscribers accounted for, had paid a fair share of such costs. When, in 1974, the Legislature, to prevent further evasion of the community service obligation by continued misreading of the statute, mandated the resumption of such proportional payments, subject only to a reasonable ceiling (L 1974, ch 1061, as amd by L 1974, ch 1062), the accompanying expression of legislative history made abundantly clear that the continuance of community service payments had been contemplated when the original Cost Control Act was passed as well (L 1974, ch 1061, § 1, and accompanying Legislative Memorandum).
Thus, the language of section 2807 of the Cost Control Act of 1969 should not have been read as authorization to discontinue payments against community service costs. The payments were not a voluntary subsidy within the discretion of AHS. They were mandatory. The costs of serving the community are just as much a part of the "cost of business” (L 1974, ch 1061, § 1) of a hospital as are its expenses for maintaining laboratories, equipment, and staff, all of which concededly are properly averaged across the number of inpatient days to arrive at the amount AHS must reimburse a hospital per patient day of AHS insured patients. It follows that the commissioner’s failure to require payments for the community service costs in 1971-1973 was arbitrary.
2. Readjustment of the reimbursement formula to take into account the known actual inflation figures for 1973 rather than the AHS gross underestimate based on a three-year weighted average which, Alice-in-Wonderland-like, unrealistically ignored the limited value of figures of past years at a time of rampant inflation. While, subsequently, the commissioner capitulated on the inflation figures for wages, conforming them to actual inflation rates, he did not do so for *872 nonwage items. In my view, it cannot be said that an arbitrary underestimate of the ravages of inflation is related to the "efficient” cost of medical services.
I believe it should be added that these items are particularly oppressive in view of the fact that, as I read it, today’s affirmance sanctions an overall formula for rate-fixing which arrives at its conclusions by substituting for the statute’s intended salutary exaction of savings through efficiency a blunderbuss approach which it is difficult to say is invulnerable to petitioners’ charge that it is arbitrary and confiscatory and thereby imperils the quality of the health care available to our citizens.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Cooke concur; Judge Fuchsberg dissents in part and votes to modify in a separate opinion; Judge Wachtler taking no part.
In the first above-entitled proceeding: Judgment affirmed, with costs, in a memorandum.
In the second and third above-entitled proceedings: Order affirmed, with costs, in a memorandum.